IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

UNITED STATES OF AMERICA )
)
v. ) No. 4:22CR00300 JM-2
)
FREDDIE GLADNEY, III )
a/k/a BANKROLL FREDDIE )

**UNITED STATES' NOTICE OF INTENT TO PRESENT EVIDENCE**

The United States of America, through Jonathan D. Ross, United States Attorney for the Eastern District of Arkansas, and Amanda Fields, Julie Peters, and Reese Lancaster, Assistant U.S. Attorneys for said district, hereby gives formal notice of its intent to present at trial evidence regarding statements made by Freddie Gladney III (Gladney) under the pseudonym Bankroll Freddie.

The United States maintains that a limited sample of lyrics from songs released by the defendant are intrinsic to the offenses charged in the Indictment. Additionally, the lyrics are also independently admissible as statements by the defendant or coconspirators under Federal Rule of Evidence 801(d)(2). Further, to the extent that any of the other acts evidence is not intrinsic to the charged criminal conduct, it is admissible under Federal Rules of Evidence 404(b).

Trial in this matter is set to begin on April 9, 2024.

## I. Introduction

On November 1, 2022, a federal grand jury returned an Indictment charging Gladney and 34 coconspirators with a variety of drug trafficking and firearms offenses. The grand jury returned

a Superseding Indictment on May 3, 2023.[1] The Superseding Indictment charged GLADNEY with ten offenses, which include the following:

- Conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine and 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846 (Count 1);
- Possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Counts 2 and 15);
- Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 3);
- Aiding and abetting a false statement to a federal firearms licensee to obtain a firearm, in violation of 18 U.S.C. § 922(a)(6) (Counts 6, 7, and 8);
- Possession of a machinegun in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count 16);
- Possession of a machinegun, in violation of 18 U.S.C. § 922(o) (Count 17); and
- Use of a communications facility in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 843(b) (Count 32).

## II. Evidence the Government Seeks to be Admitted

### A. Music Videos and Rap Lyrics

Gladney is a rap artist that releases music and performs under the name of Bankroll Freddie. In his music, Gladney frequently raps about drug trafficking, as well as his knowledge of firearms. The Government seeks to introduce a very limited portion of the defendant's statements made in lyrics of his songs, which are admissions by a party opponent and are admissible pursuant to Federal Rule of Evidence 801(d)(2)(A). The evidence is also admissible, in the alternative, under Federal Rule of Evidence 404(b) to establish defendant's knowledge, intent, and absence of mistake with respect to narcotics and firearm possession.

[1] The Superseding Indictment expanded the conspiracy period to March 2021 through November 2022.

Specifically, the Government seeks to introduce statements made by the defendant from the song "Rich Off Grass (From Trap to Rap)." During this song, the defendant raps the following lyrics: "I'm known for breaking down these bales, I ain't no fucking rapper." Then, still referring to narcotics distribution, defendant then raps the following lyrics: "448 that's a bow." At trial, the government intends to present evidence of intercepted communications obtained from a court-authorized wiretap of Gladney's telephone, wherein Gladney engaged in drug trafficking activities, and frequently referenced "a bow."

At trial, the Government anticipates presenting proof that "a bow" refers to a pound of marijuana, and seeks to introduce Gladney's lyrics in support of that position. During this song, when Gladney rapped "448 that's a bow," "448" refers to 448 grams, which converts to approximately one pound. During intercepted communications, Gladney frequently referenced a "bow" in conjunction with drug trafficking activities. For example, on May 19, 2021, at approximately 5:59 p.m., during Session 491 (Target Phone 2), Gladney spoke to a coconspirator regarding the trafficking of marijuana. During this conversation, Gladney spoke of "plays," which is a common reference to a drug transaction. Gladney then stated "That's what I had said. I said yeah, that bitch… he got him a good load. You make 300 off. You got damn near 40 bows you make 300 off each one of them, shit." The individual Gladney spoke to then said, "Damn right," and Gladney replied "Damn right. Damn right. Damn right." The two went on to discuss the profit that could be made from selling 40 pounds of marijuana.

Additionally, on June 1, 2021, at approximately 2:19 p.m., during Session 1914, Gladney, using Target Phone 2, spoke to coconspirator Rickey Foreman. During this conversation, Gladney advised Foreman "Boy they say ahh, motherfuckers been calling me like you know what I'm saying about the gas and shit. Matthew [believed to refer to coconspirator Matthew Taylor, a/k/a

Frenchie] must have some bullshit, bs." (The government anticipates presenting proof at trial that "gas" is commonly used to refer to marijuana.) During the conversation, Foreman stated "… Ain't want no weed no way but two bows bro, that ain't shit. Fuck y'all. I got plays everywhere all in Memphis." Gladney replied "Them [racial expletive] be on some [unintelligible] bro I hate bro. I was telling you this what's so funny to me bro. I can get the one right there and take it straight to 'em and they'll buy it. Them [racial expletive] is dumb, bro." Gladney goes on to state "You got some I told you they wouldn't buy none from me. You took 'em down there they bought some…" While these are not the only intercepted communications the government may seek to introduce at trial where Gladney references or discusses a "bow," this selection demonstrates that Gladney frequently referred to a "bow" while engaging in this drug conspiracy.

Additionally, the Government seeks to introduce a limited portion of statements made by the defendant in the song, the "Last Real Trap Rapper" by Bankroll Freddie. Here, while the defendant raps, he is seen on a music video holding several large bags of suspected marijuana while leaning against the purple Lamborghini. The defendant then raps the following lyrics: "Bought 100 pound when I got my first rap check, busting down bows for my shows trap vette." Later in his music video, the defendant is seen rapping to the camera while holding a large bag of what appears to be marijuana. The defendant then raps the following lyrics: "448 that's a pound, 2500 come and get it now, 224 that's a half a bow, when you run out come and get some more, 112 that's a QP, well round here we call them cuties." As stated above, when Gladney rapped "448 that's a pound," Gladney is rapping that 448 grams converts to approximately one pound. Additionally, Gladney further rapped "2500 come and get it now." During the course of this investigation, it was determined that $2,500 was the approximate value of one pound of marijuana. When Gladney then raps that "224, that's half a bow," Gladney is rapping that 224 grams converts

to half of a pound, or half a bow. When Gladney rapped "112 that's a QP, well round here we call them cuties," Gladney is clearly referencing that 112 grams converts to a quarter pound of marijuana, and then confirms that by stating "round here we call them cuties."

Finally, Gladney was featured in a song titled "Hot" released by another local rapper. During this song, Gladney rapped, "That's the reason I keep this Glock Glock, don't play with me boy you get shot shot, I'll do you [inaudible] like they did Pac Pac, I got something hot if he think he a bully, switch on the Glock change this bitch to a fully." As previously noted, in Count 17 of the Superseding Indictment, Gladney is charged with possession of a machinegun, in violation of Title 18, United States Code, § 922(o). The machinegun in question is a Glock switch device, which, when attached to a semiautomatic pistol will enable the firearm to act as a machinegun. At trial, the government must prove that Gladney knowingly possessed the machinegun, or Glock switch. Here, Gladney's lyrics clearly relate to his knowledge that a firearm equipped with a Glock switch converts the firearm to a fully automatic weapon, or machinegun.

## III. Analysis

### A. The rap lyrics from the Defendant's Music Videos are Admissible as Statements of the Defendant, as Coconspirator Statements, and/or as Nonhearsay Evidence

The United States intends to offer rap lyrics from the defendant's music videos where he discusses narcotics and Glock switches. The Eighth Circuit has recognized that such statements are admissible as defendant statements under Federal Rule of Evidence 801(d)(2)(A). Federal Rule of Evidence 801(d)(2)(A) states, "A statement is not hearsay if the statement is offered against a party and is the party's own statement, in either an individual or a representative capacity. For example, in *United States v. Manning*, 738 F.3d 937, 943-44 (8th Cir. 2014), the Court affirmed the trial court's admission of the defendant's online chats about child pornography. The Court upheld admission of the chats because the facts of the case (*i.e.*, the chats were found on a password

protected computer, and the computer's username matched one of the chat accounts) as well as the chats' content (*i.e.*, correct details about the defendant's age, his height, the ages and number of his children, and state of residence) established that the defendant was the author. *See also United States v. Stong*, 773 F.3d 920, 924 (8th Cir. 2014) (defendant's recorded statements describing content of child pornography videos were admissible as party admissions under FRE 801(d)(2)(A)).

Similarly, the lyrics in these songs and the facts of this case establish that Gladney is the author of the lyrics. Relevant evidence from the music videos and lyrics includes: (1) the fact that the lyrics were found in songs performed by "Bankroll Freddie" a pseudonym for Freddie Gladney III; (2) Gladney himself is observed rapping these lyrics to the camera in music videos; (3) features unique pieces of jewelry and cars that are known to be owned by Gladney, and (4) use unique terminology that is used by Gladney in intercepted telephone calls.

B. The Lyrics are Intrinsic to the charged misconduct.

The music videos and lyrics are also admissible as "*res gestae*" or "intrinsic" evidence. As the Eighth Circuit has observed:

> Under the theory of *res gestae*, evidence of prior crimes can be admitted when the prior crime is "so blended or connected, with the one[s] on trial as that proof of one incidentally involves the other[s]; or explains the circumstances thereof; or tends logically to prove any element of the crime charged." [Citations omitted] When evidence is admitted under *res gestae*, Rule 404(b) is not implicated.

*United States v. Riebold*, 135 F.3d 1226, 1229 (8th Cir. 1998) (quoting *United States v. Forcelle*, 86 F.3d 838, 841 (8th Cir. 1996)).

This doctrine is based on the idea that "[a] jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge."

*United States v. Savage*, 863 F.2d 595, 599-600 (8th Cir. 1988) (quoting *United States v. Moore*, 735 F.2d 289, 292 (8th Cir. 1984)). *See also United States v. Tyerman*, 701 F.3d 552, 562 (8th Cir. 2012) (evidence of other acts is admissible as intrinsic evidence where it "completes the story or provides a total picture of the charged crime.") (quoting *United States v. Johnson*, 463 F.3d 803, 808 (8th Cir. 2006)).

Here, the music videos and lyrics are close-in-time activities that are part of the course of conduct charged in the Indictment. The Eighth Circuit has held these sorts of similar, close-in-time acts were intrinsic to the charged conduct. For example, in *United States v. Washington*, 596 F.3d 926, 946 (8th Cir. 2010), the defendant was charged with selling drugs that led to the buyer's death, as well as distributing a particular drug to a different person at another time. The Eighth Circuit held that evidence that the defendant had sold the drugs to another individual four to five months prior to two sales charged in the indictment was intrinsic evidence of those sales because the prior act and the charged incidents were close-in-time and involved the same method (*i.e*., the same substance). The songs referenced above all appear to have been released in or around 2020 – 2021. The relevant lyrics involve the same contraband – marijuana and a Glock switch – and capture Gladney's knowledge of marijuana distribution.

Rule 403 also supports the admission of the proffered evidence because the lyrics are identical to the admissions captured in the captured telephone calls and the charges in this case – conspiracy to distribute and possess with intent to distribute marijuana, possession with intent to distribute marijuana, and possession of a machinegun. The Eighth Circuit considered the admission of videos of this type posted to social media sites, including Facebook. In *United States v. Rembert*, the United States brought in a Facebook video posted by the defendant where he was holding a firearm, "rapping, and smoking what looks like a marijuana blunt" at trial. *United States*

*v. Rembert*, 851 F.3d 836, 838 (2017). The defendant was convicted of "firearm possession and possession of crack cocaine with intent to distribute." *Id*. The defendant specifically challenged the admission of the rap video under Rule 404(b) on appeal. *Id*. Through this analysis, the court considered Rule 403. The court noted that the video was sufficiently probative to link the depicted conduct to the elements of the offense at issue. *Id* at 839.

Instances in which rap lyrics were found to be sufficiently probative include situations where lyrics were found to be attributable to the defendants which describe circumstances similar to the illicit activities at issue. *United States v. Norwood*, No. 12-CR-20287, 2015 WL (E.D. Mich. May 14, 2015) at 11. S In *Moore*, "some of Moore's lyrics tended to show that he knew cocaine prices, used drug code words, and sold drugs to supplement his income." *Moore* at 448. This type of evidence is found to be probative because it "bear[s] on specific issues relevant in this case, i.e. racketeering conspiracy and establishing a pattern of racketeering activity." *United States v. Mills*, 367 F.Supp.3d 664 (E.D. Mich. 2019), citing *United States v. Salameh*, 152 F.3d 88, 110 112 (2d Cir. 1998) (upholding the evidence of political speech or beliefs to prove the existence of a conspiracy and its motive); *United States v. Herron*, No. 10-CR-0615, 2014 WL 1871909, at *2-3 (E.D.N.Y. May 8, 2014) (rejecting the defendant's argument that introducing rap-related videos violates the First Amendment where the government sought "to introduce them as proof of the existence of the alleged criminal enterprise, the Defendant's membership and position therein, his association with other members, his familiarity with firearms, and a motive or plan to commit the alleged conduct").

C. The Other Acts Evidence is Admissible Under Rule 404(b)

To the extent that any of the proffered evidence is not admissible for the reasons discussed above, it is also admissible under Rule 404(b). The proffered evidence is relevant to the

defendant's intent and motive of possession with intent to distribute marijuana and his knowledge (*i.e.*, that he knew he was distributing marijuana), and identity.

"[E]vidence of prior bad acts 'should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the [prior acts].'" *United States v. Felix*, 867 F.2d 1068, 1072 (8th Cir. 1989) (quoting *Huddleston v. United States*, 485 U.S. 681 (1988)). Other acts evidence is admissible under Rule 404(b) if proven by a preponderance of the evidence. *United States v. Hill*, 638 F.3d 589, 592 (8th Cir. 2011). Moreover, it is well settled that Rule 404(b) is a rule of inclusion. *United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006).

The lyrics are relevant to show the state of mind, motive, and intent of the defendant or his correspondents. Thus, the lyrics need not be offered for the truth of the matter (*i.e.*, that the defendant possessed marijuana with the intent to distribute and that he possessed a machinegun), but to show that the defendant knew about the breakdown of quantities of marijuana, different strains of marijuana, and the functions of a Glock Switch. Such evidence would support an inference that Gladney distributed and possessed marijuana and a machinegun as charged in the Indictment. *See*, *e.g.*, *United States v. Boswell*, 530 Fed. Appx. 214, 216 (4th Cir. 2013) (unpublished) (statement found on phone in defendant's apartment "NVM the weed. I still want the other though" was a nonhearsay statement admissible as circumstantial evidence that defendant sold drugs because it showed that sender believed defendant was someone who could provide illegal drugs); *United States v. Edelen*, 561 Fed. Appx. 226, 235-236 (4th Cir. 2014) (unpublished) (affirming admission of text message sent to defendant where it was being offered not for its truth, but to show that the defendant received a message probative to his intent to commit the charged crime).

More broadly, all of the proffered evidence demonstrates the defendant's knowledge regarding marijuana distribution and machinegun possession, his motive and intent to distribute marijuana and possess what he knew to be a machinegun, the absence of mistake (*i.e.*, he did not accidentally possess a machinegun), and the fact that he was familiar with and knowledgeable in distributing marijuana. And evidence that Gladney was creator and owner of the lyrics is also relevant to identity.

Further, none of the other acts are too remote in time to the charged offenses. The lyrics from these songs occurred between January 13, 2020, and April 2, 2021. These times fall well within the ranges upheld by the Eighth Circuit. *See*, *e.g.*, *United States v. Horton*, 756 F.3d 569, 579-80 (8th Cir. 2014) (prior similar conviction eight years before trial sufficiently close in time to be admissible as 404(b) evidence); *United States v. Ragland*, 555 F.3d 706, 714 (8th Cir. 2008) (drug sales that occurred 1-2 years prior to charged sales were not too remote in time to be relevant); *United States v. Gaddy*, 532 F. 3d 783, 789 (8th Cir. 2008) (4, 10, and 11 year-old prior convictions not too remote in time); *United States v. Baker*, 82 F.3d 273, 276 (8th Cir. 1996) (prior bad act that occurred ten years before charged conduct admissible under Rule 404(b)).

The evidence described above is also sufficiently detailed and corroborated to be reliable. At trial, Federal Bureau of Investigation (FBI) Special Agent Highfill will offer that he located these lyrics from publicly available sources. The video of Gladney rapping these lyrics, similar terminology used by Gladney in captured telephone calls, testimony from co-conspirators, and the lyrics themselves demonstrate the reliability of the other acts evidence because they contain facts (*i.e.*, Gladney's pseudonym and his face in the videos) that will be confirmed by evidence in the government's case in chief.

Finally, admission of the proffered evidence would not unduly prejudice the defendant or confuse the jury. The evidence is either less prejudicial than the other evidence that will come in at trial, and/or is the same as the substantive evidence in this case. Moreover, any unfair prejudice can be addressed by the Court instructing the jury as to the proper purposes of any Rule 404(b) evidence. *See Hill*, 638 F.3d at 592.

## IV. Conclusion

For the foregoing reasons, the United States requests the Court hold that:

(1) The lyrics found in the defendant's rap videos admissible as statements made by the defendant;

(2) evidence regarding the lyrics is admissible as part of the *res gestae* of the charged conduct; and

(3) any portions of the proposed evidence that are not otherwise admissible may also be admitted under Federal Rule of Evidence 404(b).

Jonathan D. Ross
United States Attorney

AMANDA FIELDS
Assistant U.S. Attorney
Bar No. 2009078
P.O. Box 1229
Little Rock, AR 72201
(501) 340-2600
Amanda.Fields@usdoj.gov